460 U.S. 536 (1983)
WASHINGTON ET AL.
v.
UNITED STATES
No. 81-969.
Supreme Court of United States.
Argued January 10, 1983.
Decided March 29, 1983.
APPEAL FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
*537 Kenneth O. Eikenberry, Attorney General of Washington, argued the cause for appellants. With him on the briefs were Leland T. Johnson and Timothy R. Malone, Assistant Attorneys General.
Stuart A. Smith argued the cause for the United States. With him on the brief were Solicitor General Lee, Assistant Attorney General Archer, David English Carmack, and John J. McCarthy.[*]
JUSTICE REHNQUIST delivered the opinion of the Court.
The State of Washington's principal source of revenue is a sales and use tax imposed on the buyer or consumer in all retail sales and consumer uses of tangible personal property.[1] *538 In this case the United States contends that one aspect of that tax statute  its application to building construction  is invalid under the Supremacy Clause of the United States Constitution. The statutory provisions are most easily understood in light of their history.
Before 1941, building contractors were treated as consumers for sales tax purposes. All sales of tangible personal property, such as construction materials, to contractors were subject to the sales tax. The legal incidence of this tax was on the contractor; the tax was collected by suppliers who sold to contractors, and remitted by them to the State.
In 1941, Washington changed the sales tax system it applied to contractors by defining the landowner who purchases construction work from the contractor, rather than the contractor, as the "consumer." The legal incidence of the tax was now on the landowner, who paid tax on the full price of the construction project. The net result was that contractors' labor costs and markups were added to the tax base, which had previously included only the cost of tangible personal property sold to contractors.
The post-1941 tax system could not, however, be applied to construction for the Federal Government because the Supremacy Clause prohibits States from taxing the United States directly. United States v. New Mexico, 455 U. S. 720 (1982). Thus, when the United States was the landowner, Washington did not collect any tax on the sale either of tangible personal property to the contractor or of the finished building to the Government.
In 1975, the Washington Legislature acted to eliminate the complete tax exemption for construction purchased by the United States.[2] It did so by reimposing the pre-1941 tax on *539 contractors that work for the Federal Government ("federal contractors").[3] Thus, Washington now taxes the sale of nonfederal projects to the landowner, and taxes the sale of materials to federal contractors. The net result is that for federal projects the legal incidence of the tax falls on the *540 contractor rather than the landowner, and the tax is measured by a lesser amount than the tax on nonfederal projects because the contractor's labor costs and markup are not included in the tax base.
Shortly after the new statute was enacted, the United States sued the State in the District Court for the Western District of Washington, seeking a declaratory judgment and a permanent injunction against the assessment and collection of the sales tax from federal contractors, and an order requiring the refund of sales taxes already so collected, for which the United States had reimbursed its contractors. The District Court granted the United States' motion for partial summary judgment, holding that the statutes discriminate against federal contractors in violation of the Supremacy Clause. On appeal, the Court of Appeals for the Ninth Circuit affirmed. 654 F. 2d 570 (1981). Washington appealed pursuant to 28 U. S. C. § 1254(2), and we noted probable jurisdiction. 456 U. S. 970 (1982).
In recent years this Court has examined in some detail the history of the Federal Government's constitutional immunity from state taxation. United States v. New Mexico, supra, at 730-738; United States v. County of Fresno, 429 U. S. 452, 457-464 (1977). There is no reason to repeat these discussions here; it suffices to restate our conclusions. In New Mexico, we explained that "immunity may not be conferred simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy. . . . Similarly, immunity cannot be conferred simply because the state tax falls on the earnings of a contractor providing services to the Government." 455 U. S., at 734. In Fresno, we stated the rule that, "[s]o long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory . . . or until Congress declares otherwise." 429 U. S., at 460 (citing James v. Dravo Contracting Co., 302 U. S. 134, 150, 161 (1937)). Accord, Memphis Bank & Trust Co. v. Garner, 459 U. S. 392, 397 (1983).
*541 The United States' principal argument is that the tax is invalid because Washington has circumvented the Federal Government's tax immunity by identifying a federal activity for different tax treatment. Brief for United States 10, 21-31; Tr. of Oral Arg. 29-33, 40-41. Because Washington does not impose a sales tax on contractors who do not work for the Federal Government, the argument goes, it discriminates against the Federal Government and those with whom it deals.
Washington does, however, impose a sales tax on all purchases from contractors who do not deal with the Federal Government. The tax is imposed on every construction transaction, and the tax rate is the same for everyone. The only deviation from equality between the Federal Government and federal contractors on one hand, and every other taxpayer on the other, is that the former are taxed on a smaller proportion of the value of the project than the latter.[4] Thus the Federal Government and federal contractors *542 are both better off than other taxpayers because they pay less tax than anyone else in the State. This hardly seems, on its face, to be the mistreatment of the Federal Government against which the Supremacy Clause protects.
The United States relies upon Phillips Chemical Co. v. Dumas Independent School District, 361 U. S. 376 (1960), in which Texas taxed the lessees of property owned by the State on the value of their leasehold interest, but taxed some lessees of property owned by the United States on the full value of the premises. However, the Court there rejected the United States' argument that the tax was invalid simply because it treats those who deal with the Federal Government differently than it treats others.[5]Id., at 382. We plainly stated that a determination whether a tax is discriminatory "requires `an examination of the whole tax structure of the state.' " Id., at 383 (quoting Tradesmens National Bank v. Oklahoma Tax Comm'n, 309 U. S. 560, 568 (1940)).[6] The Texas tax was invalid only because it imposed "a heavier tax burden on lessees of federal property than is imposed on lessees of" state property.[7] 361 U. S., at 383, 387. See Memphis Bank & Trust Co. v. Garner, supra, at 398.
*543 In United States v. County of Fresno, supra, the county imposed a tax on the owners of real property. Of course, property owned by the United States was exempt from the tax. Rather than forgo all revenue from federally owned land, the county taxed private lessees' interests in real property rented from the Federal Government and other tax-exempt owners.[8] It did not tax the interests of any lessees of nonexempt property. We rejected the United States' contention that the tax system discriminated against lessees of federal property. Because the economic burden of a tax imposed on the owner of nonexempt property is ordinarily passed on to the lessee, we explained that those who leased property from the Federal Government were no worse off than their counterparts in the private sector. 429 U. S., at 464-465.
Similarly, in United States v. City of Detroit, 355 U. S. 466, 473-474 (1958), Michigan taxed private property owners, but not the United States or other exempt owners. Instead, the State taxed nonexempt parties' use of exempt property. It did not tax the use of nonexempt property. We upheld the tax because the State may "equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property."[9]Id., at 473. We explained that "[t]hose using exempt *544 property are required to pay no greater tax than that placed on private owners or passed on by them to their business lessees." Id., at 473-474.
In this case, federal contractors are required to pay no greater tax than that placed on private buyers of construction work or passed on by them to their contractors. The Court of Appeals sought to distinguish Detroit on the ground that the tax burden in this case is not necessarily shifted to the nonfederal contractors. 654 F. 2d, at 576. But there was no proof in either Detroit or Fresno that private owners would necessarily pass the tax on to their lessees; the opportunity for the parties to allocate the economic burden of the tax among themselves was sufficient. No more should be required here.
The important consideration, therefore, is not whether the State differentiates in determining what entity shall bear the legal incidence of the tax, but whether the tax is discriminatory with regard to the economic burdens that result. The only difference between this case and Fresno and Detroit is that the taxpayer here is a vendor of services to the United States, rather than one who receives an economic benefit from the Federal Government. To rest upon this distinction would be to elevate form over substance. The entire trend of our decisions since James v. Dravo Contracting Co., 302 U. S. 134 (1937), has been to avoid "wooden formalism." United States v. New Mexico, 455 U. S., at 737. See Fresno, 429 U. S., at 460-461, and n. 9. See generally Comment, Federal Immunity from State Taxation, 45 U. Chi. L. Rev. 695, 700-702 (1978). The State does not discriminate against the Federal Government and those with *545 whom it deals unless it treats someone else better than it treats them.[10]
The Court of Appeals thought that the Washington statutes do not provide a "political check against abuse of the taxing power," Fresno, supra, at 463, because "there is no broad state constituency taxed as are the prime contractors who deal with the federal government." 654 F. 2d, at 577. A "political check" is provided when a state tax falls on a significant group of state citizens who can be counted upon to use their votes to keep the State from raising the tax excessively, and thus placing an unfair burden on the Federal Government. It has been thought necessary because the United States does not have a direct voice in the state legislatures. See generally Fresno, supra, at 458-459, and n. 6.
The Court of Appeals focused only on the taxes levied directly on contractors, and not on " `the whole tax structure of the state.' " Phillips, 361 U. S., at 383 (quoting Tradesmens, 309 U. S., at 568). The tax on federal contractors is part of the same structure, and imposed at the same rate, as the tax on the transactions of private landowners and contractors. Indeed, the tax on contractors is part of a single sales tax scheme that is imposed at the same rate on every retail transaction in Washington; virtually every citizen is affected *546 by the tax in the same way. As long as the tax imposed on those who deal with the Federal Government is an integral part of a tax system that applies to the entire State, there is little chance that the State will take advantage of the Federal Government by increasing the tax.[11]
In short, Washington has not singled out contractors who work for the United States for discriminatory treatment. It has merely accommodated for the fact that it may not impose a tax directly on the United States as the project owner. This the State may do without running afoul of the Supremacy Clause. As the Court stated in United States v. New Mexico, supra, at 737-738:
"If the immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision, by so expressly providing as respects contracts in a particular form, or contracts under particular programs. James v. Dravo Contracting Co., 302 U. S., at 161; Carson v. Roane-Anderson Co., 342 U. S. 232, 234 (1952). And this allocation of responsibility is wholly appropriate, for the political process is `uniquely adapted to accommodating the competing demands' in this area. Massachusetts v. United States, 435 U. S. 444, 456 (1978) . . . . But absent congressional action, we have emphasized that the States' power to tax can be denied only under `the clearest constitutional mandate.' Michelin Tire Corp. v. Wages, 423 U. S. 276, 293 (1976)."[12]
The judgment of the Court of Appeals is
Reversed.
*547 JUSTICE BLACKMUN, with whom JUSTICE WHITE, JUSTICE MARSHALL, and JUSTICE STEVENS join, dissenting.
The Court by its ruling in this case continues its recent tendency[1] to be sympathetic with States in their urgent quest for new taxes. In my view, however, the Court now oversteps the important and significant boundary that separates appropriate state taxation, having only an incidental effect on federal operations, from inappropriate state taxation that is imposed directly or indirectly upon the United States and is therefore invalid under the Supremacy Clause, Art. VI, cl. 2, of the United States Constitution. The State of Washington has sought to circumvent the United States' absolute constitutional immunity from state taxation. The District Court and the Court of Appeals in this litigation upheld the Federal Government's protest against the incursion and granted the United States declaratory and injunctive relief. This Court, by reversing that considered judgment, upholds Washington's circumvention.

I
The Supremacy Clause, of course, is the foundation of McCulloch v. Maryland, 4 Wheat. 316 (1819), where the Court laid down the principle that the property, functions, and instrumentalities of the Federal Government are immune from taxation by its constituent parts. Since McCulloch, the Court "has never questioned the propriety of absolute federal immunity from state taxation." United States v. New Mexico, 455 U. S. 720, 733 (1982). And "a State may not, consistent with the Supremacy Clause . . . lay a tax `directly upon the United States,' Mayo v. United States, 319 U. S. 441, 447 (1943)." Ibid. Federal immunity is "the unavoidable *548 consequence of that supremacy which the constitution has declared." McCulloch v. Maryland, 4 Wheat., at 436.
An established corollary of this basic principle is that "a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals." United States v. City of Detroit, 355 U. S. 466, 473 (1958). Accord, Memphis Bank & Trust Co. v. Garner, 459 U. S. 392 (1983). Specifically, it "remains true . . . that state taxes on contractors are constitutionally invalid if they discriminate against the Federal Government, or substantially interfere with its activities." United States v. New Mexico, 455 U. S., at 735, n. 11. To be sure, "the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the State." United States v. County of Fresno, 429 U. S. 452, 462 (1977).
But here, contractors for the Federal Government are singled out for a special tax that applies to no other contractor within the State of Washington. A contractor who deals with the Federal Government is subject to the tax. One who deals with the State or a private party is not subject to the tax. It is as simple as that. It necessarily follows that the tax violates the Supremacy Clause, just as if the tax were laid directly upon the United States. To hold otherwise, by measuring the perceived economic burden, demeans the principle of McCulloch v. Maryland.

II
I agree with the Court that Washington's statutory provisions are best understood "in light of their history." Ante, at 538. But that history reveals, it seems to me, the clear purpose of the Washington Legislature to "get at" the Federal Government and to overcome its tax immunity. In contrast with the usual silence of legislative history behind *549 state enactments, the history here is clear and the purpose is specific.
A. Washington's sales and use taxes came into being in 1935. 1935 Wash. Laws, ch. 180. Under that original legislation, all building contractors were treated in precisely the same manner. Sales of tangible personal property to the contractor were subject to the retail sales tax, and use of tangible personal property by the contractor was subjected to the use tax if it had not first been subjected to the sales tax. There were no exceptions to this pattern. It applied to contractors who dealt with the Federal and State Governments, with local governments, and with private parties.
B. In 1941, however, a major change was effected in the State's system as it applied to contractors. The taxable transaction no longer was the sale to the contractor; instead, the taxable transaction became the sale by the contractor to the property owner. 1941 Wash. Laws, ch. 178, § 2. See Klickitat County v. Jenner, 15 Wash. 2d 373, 130 P. 2d 880 (1942). The sale of building items to the contractor then became a nontaxable wholesale transaction. This change, for purposes of the present case, had two important consequences. The first was that the State's sales tax base was expanded. Before 1941, it had included only property sold to the contractor. Now it included the contractor's total charge to the owner. This charge, of course, included not only the costs of material, but labor costs and the contractor's profit as well. The second consequence of the 1941 statute related to construction for the Federal Government. Here the tax base was diminished. Most sales of property to the contractor were immune because they were at wholesale. But the transaction between the contractor and the Federal Government also was immune because of the Government's vendee status and its constitutional immunity from a direct tax.
Clearly, this 1941 change in the statute was a knowing one. Washington accepted Federal Government immunity in exchange, as it were, for the substantial expansion of the sales *550 tax base for all other construction. Thus, from 1941 through the first half of 1975, no sales or use taxes were levied on nonroad construction projects on real property owned by the Federal Government in the State of Washington. This was the result of a considered choice by the legislature generally to enlarge its tax base.
C. This happy situation for federal construction projects in the State became the subject of the Washington Legislature's concern and disapproval in 1975. In an attempt to collect sales and use taxes with respect to material incorporated in building construction projects owned by the United States, the legislature redefined the terms "retail sale" and "consumer" in the State's sales and use tax statutes.[2] It is conceded that the target was specific and the change purposefully made to catch the burgeoning federal construction in the State. Brief for Appellants 6-8; Tr. of Oral Arg. 7. As a result, prime contractors performing construction work on real property owned by the United States now were required to pay sales and use taxes on material and personal property incorporated into such construction projects. In stark contrast, however, the 1975 legislation did not amend the State's sales and use tax laws so as to impose like obligations on contractors performing construction work on real property owned by the State or by private persons. With respect to these, any such taxes imposed continued to be the obligation of the particular project's owner. The enlargement of the tax base that had been effectuated in 1941 was thus preserved.
The consequence of the 1975 change is that prime contractors performing construction work in the State of Washington were divided into two separate and distinct categories. The first consisted of those performing construction work for the United States; these contractors now were liable for sales and use taxes on material incorporated in their projects. *551 The second consisted of prime contractors performing construction work for the State or a private person; these contractors were not liable for sales and use taxes with respect to material incorporated therein. Since the 1975 statutory change, the State has required prime contractors on United States construction projects to pay state sales and use taxes as "consumers" of material. But similarly situated prime contractors for the State and for private persons are not so taxed.

III
It is easy and convenient to argue, as the Court does, ante, at 540-542, that Washington imposes a sales tax on all purchases from contractors who do not deal with the Federal Government, that the tax rate is the same for everyone, and that the Federal Government is really better off than others because the tax consequence to it is a lesser amount inasmuch as the contractor's labor costs and markup are not included in the tax base. The latter alleged fact, as I shall endeavor to point out, is a glib and, in my view, unwarranted assumption.
Three cases, in particular, decided by this Court demand affirmance of the judgment of the Court of Appeals. The first is Miller v. Milwaukee, 272 U. S. 713 (1927). There the Court struck down a Wisconsin income tax provision that, similarly, sought to circumvent the tax immunity of the United States. It held unconstitutional the State's attempt to single out the income from corporation-owned Government bonds and to tax a fraction of corporate dividends equal to the fraction of the corporation's income derived from Government bonds. It was the selection of such income for tax, to the exclusion of other income, that was the basis of the decision. Justice Holmes, in speaking for the Court, stated:
"A system of taxation that applied to stockholders of all corporations equally might tax . . . the stockholders of a corporation that had invested all its property in United States bonds. But it would be a different matter if the state selected such corporations . . . and taxed their *552 stockholders alone. It is a familiar principle that conduct which in usual situations the law protects may become unlawful when part of a scheme to reach a prohibited result." Id., at 714-715.
Such discriminatory selectively is forbidden by the Constitution. This analysis was reaffirmed by a unanimous Court in Phillips Chemical Co. v. Dumas Independent School Dist., 361 U. S. 376, 383 (1960), when it pronounced that Miller v. Milwaukee stands for the proposition that "a State may not single out those who deal with the Government, in one capacity or another, for a tax burden not imposed on others similarly situated."[3]
Phillips is the second case. It demonstrates that discrimination against the Federal Government need not be explicit in a State's statute to be prohibited by the Supremacy Clause. There, Texas legislation provided for taxation of private users of Government realty but the tax was less for property held under a lease for three years or more. Because a federal lease was subject to termination in the event of sale, the lessee could not qualify for the preferential tax treatment. Accordingly, the Court held the Texas statute unconstitutional. It said:
"Here, Phillips is taxed . . . on the full value of the real property which it leases from the Federal Government, while businesses with similar leases, using exempt property owned by the State and its political subdivisions, are not taxed on their leaseholds at all. The differences. . . seem too impalpable to warrant such a gross differentiation. It follows that [the statute], as applied in this case, discriminates unconstitutionally against the United States and its lessee." 361 U. S., at 387.
*553 The continuing validity of Phillips was recognized by a unanimous Court just a few weeks ago. Memphis Bank & Trust Co. v. Garner, 459 U. S., at 398. As the Court acknowledges, ante, at 542, the Texas tax was said to be invalid "because it imposed `a heavier tax burden on lessees of federal property than is imposed on lessees of' state property." The reference to the comparative weight of the tax was not one to the rate but to the quantity of the property interest taxed. So it is here, for what the State of Washington taxes with respect to a federal building contractor is different from what it taxes with respect to any other building contractor. The holding and principle of Phillips are not so easily to be explained away.
The third case is Moses Lake Homes, Inc. v. Grant County, 365 U. S. 744 (1961). There the county attempted to tax the full value of improvements on privately owned Wherry Act leaseholds of housing developments on a military base. It taxed other leaseholds, however, including privately owned leaseholds of tax-exempt state lands, at a lower valuation. A unanimous Court held the tax unconstitutional and void, and it reversed the lower court's judgment to the effect that the Constitution required only that the amount collectible be reduced to the level of taxes upon other leaseholds. The Court today would distinguish Moses Lake Homes by saying merely that it "does not support the United States' position any more than the holding in Phillips." Ante, at 542-543, n. 7.
It seems to me that Miller, Phillips, and Moses Lake Homes all require the conclusion that the Washington tax under submission here is invalid as applied to contractors for the Federal Government. A State cannot single out the Federal Government and those with whom it deals for special tax burdens. For more than 30 years the State of Washington apparently remained content with the choice it made in its 1941 restructuring of its sales and use taxes to gain enhanced revenue from other sources at the price of sacrificing revenue from Federal Government contractors. A substantial *554 expansion of construction activity on behalf of the United States brought to the attention of the state legislature a prized target for increased state taxation. A statute singling out those who serve the United States was the result and equated with a tax on the United States itself.
The State asserts, and the Court appears to agree, ante, at 541-542 and 543, that so long as the monetary burden on Government contractors is no greater than the burden on others, the discrimination is constitutionally acceptable. It asserts, in other words, that the United States has no ground for complaint unless it is placed at a competitive disadvantage in the marketplace.
This conclusion is misguided as a matter of law. The decision in Moses Lake Homes establishes that the Supremacy Clause guarantees more than that the United States will not be placed at a competitive disadvantage, for there this Court reversed a ruling that would have resulted in equal tax burdens on federal and nonfederal lessees. The Supremacy Clause does not merely guarantee equality; it absolutely immunizes the contractors and lessees of the United States from discriminatory state taxation.
The Court's economic burden argument is also questionable as a matter of fact. That the incidence of the tax as applied to federal contractors does not include labor and profit components does not necessarily mean that the total costs to the contractors and hence to the United States are less than the total costs to a nonfederal contractor. Only the federal contractor is required, under Washington's system, to put out additional tax money "up front," as the project progresses, to maintain special records, to hire personnel for such recordkeeping, and to prepare and file returns. This is not inexpensive activity, and its costs could exceed what would have been the tax increment on the labor and profit components. The record does not disclose the facts.[4] In *555 any event, those facts are inconsequential, for it is discrimination, not the quality of the burden, that carries unconstitutional consequences. It is "absolute federal immunity from state taxation" that this Court "has never questioned." United States v. New Mexico, 455 U. S., at 733.
The Court's reliance upon United States v. County of Fresno, 429 U. S. 452 (1977), deserves passing mention. There a possessory use tax was imposed solely on private citizens who used tax-exempt land. The individual appellants in that case were United States Forest Service employees who lived in federally owned houses. The Court concluded, however, that there was no discrimination, for the tax did not discriminate against the Forest Service or other federal employees. Indeed, the United States expressly abandoned any claim that the tax treated federal employees differently from state employees who lived in state-owned houses. Id., at 464, n. 13.
Finally, it is of interest to note the Court's obvious discomfort in evaluating the relative burdens of different methods of taxation by States of the Federal Government and of those with whom it does business. In Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, also decided today, post, at 589-590, n. 12, the Court struggles with the problem of the economic incidence of a tax on the Federal Government. There it says that a State remains free to impose the economic incidence of a tax on the United States so long as that tax is not discriminatory, and it explains the *556 result in this Washington case as a mere accommodation. This, the Court says, may "force us, within limits, . . . to compare the burdens of two different taxes." For me, that is a new approach to state taxation of the Federal Government, and it flies in the face of the Court's simultaneously expressed view that "courts as institutions are poorly equipped to evaluate with precision the relative burdens of various methods of taxation." Post, at 589; see post, at 600 (REHNQUIST, J., dissenting). I had thought this measure of state taxation of the Federal Government absolutely improper as a constitutional matter. United States v. New Mexico, 455 U. S., at 733. Now the Court, in order to prevent abuse, will have to dissect and carefully measure every state system that imposes its tax burden upon the United States.
I respectfully dissent.
NOTES
[*] George Deukmejian, Attorney General, filed a brief for the State of California as amicus curiae urging reversal.
[1] The sales tax is imposed by Chapters 82.04, 82.08, and 82.14 of the Revised Code of Washington (1981). The use tax is imposed by Chapters 82.12 and 82.14 (1981). The terms "buyer" and "consumer" are quite broadly defined in Wash. Rev. Code §§ 82.08.010, 82.04.190 (1981).
[2] The statute places public housing authorities in the same category as the Federal Government. No party has argued that this circumstance affects the analysis of this case, and public housing authorities will be disregarded throughout this opinion. The statute treats all branches of state or local government other than public housing authorities in the same way as private parties.
[3] As the Court of Appeals explained, 654 F. 2d 570, 573, n. 6 (1981):

"The manner in which this was accomplished is somewhat complex. The change was effected by substitute House Bill No. 86, enacted into law as Chapter 90, Laws of 1975 (amending Wash. Rev. Code §§ 82.04.050 and 82.04.190); Section 5 of Substitute House Bill No. 2736, enacted into law as Section 5 of Chapter 291, Laws of 1975 (amending Wash. Rev. Code § 82.04.050) and House Bill No. 1229, enacted into law as Chapter 1, Laws of 1975-76 (amending Wash. Rev. Code §§ 82.12.010 and 82.12.020). These statutes added the following definition of `consumer' to Wash. Rev. Code § 82.04.190:
" ` "Consumer" means the following: . . .
" `(6) Any person engaged in the business of constructing, repairing, decorating, or improving new or existing buildings or other structures under, upon or above real property of or for the United States, any instrumentality thereof, or a county or city housing authority created pursuant to chapter 35.82 RCW, including the installing or attaching of any article of tangible personal property therein or thereto, whether or not such personal property becomes a part of the realty by virtue of installation. Any such person shall be a consumer within the meaning of this subsection in respect to tangible personal property incorporated into, installed in, or attached to such building or other structure by such person.'
"These statutes further expressly excluded from the definition of `consumer' `the United States, instrumentalities thereof, and county and city housing authorities created pursuant to chapter 35.82 RCW in respect to labor and services rendered to their real property.' Wash. Rev. Code § 82.04.190(4). Wash. Rev. Code § 82.04.050 was also amended so as to redefine `retail sale' and `sale at retail' to exclude expressly from their scope contracts calling for the improvement, repair or construction of real property owned by the United States or any of its instrumentalities and to include sales of materials to prime contractors engaged in construction work on federally-owned property. As with the sales tax, the liability of federal prime construction contractors for the State's use tax arose basically from the inclusion of such contractors within the meaning of the term `consumer,' and the use of that term in Wash. Rev. Code § 82.12.020, under which the use tax is levied."
[4] The United States argues that it is inappropriate to consider the economic burden on the contractor and the owner together, and that we should focus solely on the tax the contractor is required to pay. When the case is viewed in this light, we told, it is apparent that federal contractors pay more than other contractors. The Court of Appeals apparently accepted this argument. Id., at 576.

This way of looking at the problem is unrealistic. The appropriate question is whether a contractor who is considering working for the Federal Government is faced with a cost he would not have to bear if he were to do the same work for a private party. If he works for the Federal Government, the contractor is required to pay a tax on the materials he buys. The contractor will count the tax among his costs in setting a price for the Government. Depending on his bargaining power, he may pass some or all of the tax on to the Federal Government when he sets his price. If he works for a private party, the contractor is required to collect the tax from the purchaser and remit it to the State. The purchaser will count the tax as part of the price of the building. Depending on his bargaining power, the contractor may reduce his price to make up for some or all of the tax the purchaser must pay. If the tax is the same, and the parties have the same bargaining power, the amounts the purchasers pay and the amounts the contractors receive will be identical in the two cases. Thus, it makes no difference to the contractor (or to the purchasers) which of them is required to pay the tax to the State, as long as they have the opportunity to allocate the burden among themselves by adjusting the price.
[5] We acknowledged that Macallen Co. v. Massachusetts, 279 U. S. 620 (1929), supported the United States' argument, but explained that, "to the extent that it does, it no longer has precedential value." 361 U. S., at 382. See also United States v. City of Detroit, 355 U. S. 466, 472, n. 2 (1958).
[6] We noted that "nothing in Miller [v. Milwaukee, 272 U. S. 713 (1927), upon which the United States also seeks to rely], at least as it has been interpreted in later cases, should be read as indicating that less is required." 361 U. S., at 383.
[7] The United States also relies upon Moses Lake Homes, Inc. v. Grant County, 365 U. S. 744 (1961). In that case, like in Phillips, the State taxed lessees of property owned by the State on a lower valuation than lessees of property owned by the United States. We held, on the authority of Phillips, that the tax was invalid. 365 U. S., at 751. This holding does not support the United States' position any more than the holding in Phillips.

The Court of Appeals in Moses Lake had attempted to eliminate the discriminatory aspect of the tax by reducing the tax "to what it would have been if" it had been levied on a state lessee. 365 U. S., at 752. We held that the Court of Appeals did not have the power to revise the state tax to cure a constitutional defect. Ibid. This was nothing more than a ruling on severability and has no bearing on this case.
[8] Nothing in the case turned on the existence of other tax-exempt owners.
[9] This answers the United States' contention that the Washington tax is invalid simply because it is an attempt to circumvent the Federal Government's tax immunity. The Washington statute is no different from any other taxing scheme that switches the incidence of the tax from one party to a transaction to another when the party that would ordinarily be taxed is immune. In this respect, this case is no different from Fresno or Detroit.
[10] In this respect, this case is like United States v. Department of Revenue of Illinois, 371 U. S. 21 (1962), summarily aff'g 202 F. Supp. 757 (ND Ill.). Illinois imposed a retail sales tax on the retailer and a tax in an identical amount on the purchaser. The State permitted the retailer to keep the tax he collected from the purchaser. Although retailers could not, of course, collect the tax from the United States when it purchased goods from them, they were nonetheless required to pay the tax imposed on them. Retailers who dealt with the United States were economically burdened by this taxing scheme unless they could adjust their prices to pass their tax burden on to the Federal Government. Nevertheless, this Court summarily affirmed the District Court's conclusion, id., at 760, that such disparate treatment of taxpayers resulting from the United States' immunity from state taxation is not forbidden by the Supremacy Clause.
[11] A different situation would be presented if a State imposed a sales tax on contractors who work for the Federal Government, and an entirely different kind of tax, such as a head tax or a payroll tax, on every other business. That, however, is not this case.
[12] We note that when Congress has acted in this field, it has applied a nondiscrimination rule. See, e. g., Memphis Bank & Trust Co. v. Garner, 459 U. S. 392 (1983) (construing 31 U. S. C. § 742). If some other test of the validity of a state tax was necessary to protect the Federal Government, it would be reasonable to expect that Congress would, for at least some situation, have devised one.
[1] See, e. g., United States v. County of Fresno, 429 U. S. 452 (1977); United States v. New Mexico, 455 U. S. 720 (1982). But compare Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, post, p. 575.
[2] See 1975 Wash. Laws, 1st Ex. Sess., ch. 90, and ch. 291, § 5, and 1975 Wash. Laws, 2d Ex. Sess., ch. 1.
[3] Miller v. Milwaukee is not to be explained away, as the Court attempts to do, ante, at 542, n. 6, by intimating that later cases have cut back the holding in Miller. The quotation from Miller, set forth in the Court's footnote, appears on the same page of the Phillips opinion as the Court's more positive and specific statement of law I have quoted in the text.
[4] Additionally, the Court's assumption, ante, at 541-542, n. 4, that a federal contractor will be able to pass the tax through to the Federal Government is highly suspect. First, the assumption hardly can be applied to a contract made prior to the 1975 legislation. A contractor trapped with such a contract has the burden of the tax; a private contractor is not at the same risk. Second, the Court seems to believe that a federal contractor has the same amount of bargaining power with the Federal Government as his private counterpart has with his contractual partner. I suspect that in most circumstances this is not correct. Under Washington's tax, a private contractor charges his client the amount of the state tax on top of the contract price; it is far from clear that a federal contractor is able to pass the tax on in the same way to the Federal Government.