190 N.J. Super. 131 (1983)
462 A.2d 193
EXXON CORPORATION, ET AL., PLAINTIFFS-APPELLANTS,
v.
ROBERT HUNT, ADMINISTRATOR OF N.J. SPILL COMPENSATION FUND, ET AL., DEFENDANTS-RESPONDENTS. and EXXON CORPORATION, ET AL., PLAINTIFFS-APPELLANTS,
v.
ROBERT HUNT, ADMINISTRATOR OF N.J. SPILL COMPENSATION FUND, ET AL., DEFENDANTS-RESPONDENTS. EXXON CORPORATION, ET AL., APPELLANTS,
v.
KENNETH R. BIEDERMAN, TREASURER OF THE STATE OF N.J., AND THE N.J. DEPARTMENT OF THE TREASURY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1983.
Decided June 22, 1983.
*132 Before Judges MATTHEWS, ANTELL and FRANCIS.
John J. Carlin, Jr., argued the cause for appellants, (Farrell, Curtis, Carlin & Davidson, attorneys; John J. Carlin and Lisa J. Pollack on the brief).
Mary C. Jacobson, Deputy Attorney General, argued the cause for respondents (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Michael R. Cole, Assistant Attorney General, of counsel and Mary C. Jacobson on the brief).
The majority opinion of the court was delivered by ANTELL, J.A.D.
These are consolidated appeals challenging (1) a declaratory judgment of the Tax Court determining the extent to which the taxing provisions of the New Jersey Spill Fund and Compensation Act, N.J.S.A. 58:10-23.11h are preempted by section 114(c)[1] of the Federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), 42 U.S.C.A. § 9601 et seq. and (2) the validity of certain regulations promulgated by the State Treasurer under the Spill Fund Act. We affirm the judgment of the Tax Court substantially for the *133 reasons stated by Judge Evers in his written opinion published at 4 N.J. Tax 294 (Tax Ct. 1982).
Pursuant to N.J.S.A. 58:10-23.11t the State Treasurer and the spill fund director are authorized to adopt such rules and regulations pursuant to the Administrative Procedure Act as they may deem necessary to accomplish their purposes and responsibilities under the Spill Fund Act. N.J.S.A. 52:14B-4(a)(1) of the Administrative Procedure Act requires the agency to give 30 days public notice prior to the adoption, amendment or repeal of any rule. Subsection (3) requires the agency to
Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing. The agency shall consider fully all written and oral submissions respecting the proposed rule.
On January 4, 1982 the Department of Treasury published its proposed regulations governing expenditures under the Act in the New Jersey Register, 14 N.J.R. 36, inviting interested parties to submit their comments on or before February 13, 1982. Plaintiffs hand delivered their written comments on February 11, 1982, but the department erroneously determined that they were "untimely and need not be considered," and on March 15, 1982 published a Notice of Adoption of the Regulations in the New Jersey Register, 14 N.J.R. 285. On March 29, 1982 plaintiffs submitted their written request that the department correct its error by rescinding its regulations and re-proposing them with provision for a "meaningful comment period." Their request was denied by letter from the Assistant State Treasurer dated April 7, 1982.
The State's position with respect to this issue is that the omission was only "a technical error which does not justify the invalidation of the regulations." It points out that although plaintiffs' comments were treated as untimely received for purposes of entitlement to consideration before adoption of the regulations the Department had nevertheless "become familiar" with plaintiffs' position before proposing the regulations. Relying upon N.J.S.A. 52:14B-4(d), it maintains that the validity of the regulations should be sustained on the basis of its "substantial *134 compliance" with the provisions of the Administrative Procedure Act.
The explanations offered by the State fail to justify its non-compliance with the clearly stated requirements of the Administrative Procedure Act. Although its disregard of the Act is not as complete as that considered in Glaser v. Downes, 126 N.J. Super. 10 (App.Div. 1973), certif. den. 64 N.J. 573 (1974), the denial of due process of law resulting to plaintiffs is no less. Substantial compliance with the Administrative Procedure Act cannot be found where the prescribed system of notice and written comments, called "the mainstay of modern rulemaking procedure," Davis, Administrative Law of the Seventies, at 169 (1976), has been sidestepped.
We conclude that the regulations under review adopted by notice published March 15, 1982 are invalid and without force and effect.
MATTHEWS, P.J.A.D. (concurring).
I agree with the conclusion reached by Judge Evers in the Tax Court which we now affirm. I also agree that plaintiffs were denied due process of law in the rule-making process. I am constrained to file this concurring opinion, however, because there appears to be a general assumption in the majority opinion that the Congress could preempt New Jersey's taxation provision if it so intended. I think that such an assumption is erroneous.
The Supremacy Clause of the United States Constitution provides in pertinent part:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land.... [U.S. Const., Art. VI, cl. 2]
I question whether a statute passed by Congress which denies to the states the right to tax for the purposes of the Spill Fund is "made in Pursuance" of the Constitution. A state may not tax imports or exports, federal property, or interstate commerce *135 discriminatorily, or in any fashion that could obstruct a legitimate exercise of Congressional power. Beyond those limitations, the states have broad powers to structure revenue raising taxes as they see fit. As Judge Evers found, "plaintiffs neither raised nor attempted to support any argument that the taxing provisions of spill fund were violative of any other constitutional rights." 4 N.J. Tax at 316. He also noted that "plaintiffs do not suggest that there is an actual conflict between the limited purposes of super fund and the overall policy enunciated by New Jersey in spill fund." Id. Plaintiffs do not contest these statements on appeal. Thus, the underlying premise of both plaintiffs' argument here and of Judge Evers' opinion is that if Congress implicitly or explicitly intended to preclude the states from taxing for any purpose which is otherwise constitutional it has the power to do so under the Supremacy Clause.
The most basic premise of our constitutional form of government is that in the Constitution the sovereign states relinquished certain of their sovereign powers to the federal government for its exclusive exercise. See Goldstein v. California, 412 U.S. 546, 552, 93 S.Ct. 2303, 2307, 37 L.Ed.2d 163, reh. den. 414 U.S. 883, 94 S.Ct. 27, 38 L.Ed.2d 131 (1973). "But ... the State governments would clearly retain all the rights of sovereignty which they before had, and which were not, by that act, exclusively delegated to the United States." Id. 412 U.S. at 552-553, 93 S.Ct. at 2308, quoting from Number 32 of The Federalist by Alexander Hamilton (emphasis in original).[1] Hamilton went on *136 to specify the three instances when state sovereignty would be deemed alienated: "... where the Constitution in express terms granted an exclusive authority to the Union; where it granted in one instance an authority to the Union, and in another prohibited the States from exercising the like authority, and where it granted an authority to the Union, to which a similar authority in the States would be absolutely and totally contradictory and repugnant." Id.; emphasis in original.
As in Jones v. Rath Packing Co., 430 U.S. 519, 524-525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, reh. den. 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977), this case "contains no claim that the Constitution alone denies [New Jersey] power to enact the challenged provisions." In fact "the breadth of concurrent taxing powers of state and nation" have long been recognized. Hines v. Davidowitz, 312 U.S. 52, 68, n. 21, 61 S.Ct. 399, 404, n. 21, 85 L.Ed. 581 (1940), citing No. 32, The Federalist. Over one hundred years ago the Court found "nothing in the Constitution which contemplates or authorizes any direct abridgement of [the concurrent powers to tax] by national legislation." Lane County v. Oregon, 7 Wall. 71, 74 U.S. 71, 77, 19 L.Ed. 101, 105 (1868). "The extent to which [a State's power to tax] shall be exercised, the subjects upon which it shall be exercised, and the mode in which it shall be exercised, are all equally within the discretion of the Legislatures to which the States commit the exercise of the power." Id. The only limits to a State's power to tax outside of those explicitly stated in the Constitution is that a tax "must not be used as to burden or embarrass the operations of the National Government." Id.
*137 The idea that a state has "the freedom of a sovereign both as to objects and methods" of taxation has been frequently repeated. Shaffer v. Carter, 252 U.S. 37, 51-52, 40 S.Ct. 221, 225, 64 L.Ed. 445 (1919), quoting Michigan C.R. Co. v. Powers, 201 U.S. 245, 292, 26 S.Ct. 459, 462, 50 L.Ed. 744 (1906). This freedom extends without interference "even if the effect ... is akin to double taxation ... since it is settled that nothing in [the Federal Constitution] or in the 14th [sic] Amendment prevents the states from imposing double taxation." 252 U.S. at 58, 40 S.Ct. at 227. As long as there is "some adequate or reasonable basis" for the taxation classifications double taxation is not forbidden. Swiss Oil Corp. v. Shanks, 273 U.S. 407, 413, 47 S.Ct. 393, 395, 71 L.Ed. 709 (1926).
Close federal supervision of states' taxing power would be "intolerable" and "hostile to the basic principles of our Government...." Allied Stores of Ohio v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959), quoting Ohio Oil Co. v. Conway, 281 U.S. 146, 159, 50 S.Ct. 310, 314, 74 L.Ed. 775 (1929). Some limits to a state's power to tax are found in the Equal Protection Clause, but "that clause imposes no iron rule of equality," 358 U.S. at 526, 79 S.Ct. at 440. The tax must have a rational basis and may not be "palpably arbitrary." Id. at 527, 79 S.Ct. at 441. It is also well established that the Supremacy Clause prohibits states from taxing the United States or its property directly. Washington v. United States, ___ U.S. ___, ___, 103 S.Ct. 1344, 1348, 75 L.Ed.2d 264, 268 (1983). But even that prohibition has been very narrowly construed and "the States' power to tax can be denied only under `the clearest constitutional mandate.'" Id. at ___, 103 S.Ct. at 1351, 75 L.Ed.2d at 273, quoting Michelin Tire Corp. v. Wages, 423 U.S. 276, 293, 96 S.Ct. 535, 544, 46 L.Ed.2d 495 (1976), as cited in United States v. New Mexico, 455 U.S. 720, 737-738, 102 S.Ct. 1373, 1384, 71 L.Ed.2d 580 (1982). State taxes which affect interstate commerce must have a reasonable nexus between the taxing state and activities being taxed and must not discriminate against interstate commerce in favor of intrastate commerce *138 or unduly infringe upon Congress' right to regulate interstate commerce. See generally, Tribe, American Constitutional Law, § 6-14, 15. The Constitution explicitly prohibits states from laying "any Imposts or Duties on Imports or Exports...." U.S. Const., Art. I, § 10, cl. 2. See also Michelin Tire Corp. v. Wages, supra, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495.
Plaintiffs in this case make no allegations that the State has transgressed any of these limits on its spill fund tax. Their argument is based on an interpretation that § 114(c) of the Superfund precludes states from taxing for the same purpose as the Superfund. In light of the strong history of the states' freedom as to the "modes and subjects" of their taxation schemes, and the Supreme Court's approval of double taxation, there must be some demonstration that New Jersey's tax somehow stands as an obstacle to the accomplishment of any of the permissible goals of the Superfund. I know of no authority which would permit Congress to prohibit a state from imposing an otherwise constitutional tax simply because it had determined that the taxpayer should not be taxed by both the federal and state governments. Presumably Congress could impose such a prohibition if it determined the state tax unduly interfered with its regulation of interstate commerce but, again, no such allegations have been presented here. The Supreme Court has admonished and repeated "[w]e must also be careful to distinguish those situations in which the concurrent exercise of a power by the Federal Government and the States or by the States alone may possibly lead to conflicts and those situations where conflicts will necessarily arise." Goldstein v. California, 412 U.S. at 554, 93 S.Ct. at 2309. No allegation of any conflict has been made.
The Supreme Court has stated in numerous cases that when the federal government has not been given exclusive control over a given matter "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." Maryland v. Louisiana, 451 U.S. *139 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). Certainly there should be no finding that congressional action precludes the states from exercising their powers to tax without some clear indication that Congress has a constitutional basis for so doing.
We should bear in mind that private parties have chosen to litigate this issue. This case does not represent a direct conflict between state and federal authorities. Perhaps the issue would be better framed as "Does New Jersey have the power to impose the Spill Fund Tax on these plaintiffs?" Such a reformulation recognizes that this case clearly is one arising under the state law. It also emphasizes that this is a matter between the private plaintiffs and the State of New Jersey. As Exxon has attempted to structure its arguments, it is attempting to assert a power of the federal government which that government may or may not even believe it possesses.
NOTES
[1] 42 U.S.C.A. § 9614(c)
[1] E.g., the first paragraph of The Federalist 32 reads:

Although I am of opinion that there would be no real danger of the consequences which seem to be apprehended to the State governments from a power in the Union to control them in the levies of money, because I am persuaded that the sense of the people, the extreme hazard of provoking the resentments of the State governments, and a conviction of the utility and necessity of local administrations for local purposes, would be a complete barrier against the oppressive use of such a power; yet I am willing here to allow, in its full extent, the justness of the reasoning which requires that the individual States should possess an independent and uncontrollable authority to raise their own revenues for the supply of their own wants. And making this concession, I affirm that (with the sole exception of duties on imports and exports) they would, under the plan of the convention, retain that authority in the most absolute and unqualified sense; and that an attempt on the part of the national government to abridge them in the exercise of it, would be a violent assumption of power, unwarranted by any article or clause of its Constitution.