OPINION OF THE COURT
Titone, J.
The question before us is whether an international bank chartered by the Federal Government pursuant to the Edge Act (12 USC §§ 611-632),[1] having a home office in another State and a branch office in New York City is immune from New York taxation. Inasmuch as we conclude that Edge Act banks are not Federal instrumentalities entitled to constitu *284 tional immunity from State tax and Congress has not clearly prohibited such a tax, we hold that Edge Act bank branches are not immune from nondiscriminatory State taxation.
I.
In 1919, Congress authorized the incorporation of international banks to be chartered by the Federal Government (12 USC §§ 611-632 [Edge Act]) in response to a perceived need to supply international credit and to secure foreign trade markets for domestic exports (Note, Constitutional and Statutory Analysis of State Taxation of Edge Act Corporate Branches, 51 Fordham L Rev 991, 995). Edge Act banks were to provide general banking services for international transactions, establish overseas branches, receive deposits in the United States only when incidental to international business transactions and invest in the stock of certain other corporations engaging in business abroad (12 USC § 615).
The Federal Reserve Board, the regulating authority, apparently interpreted the authorization of Edge Act bank branches and agencies in "foreign countries, their dependencies or colonies, and in the dependencies or insular possessions of the United States, at such places as may be approved by the Federal Reserve Board” (12 USC § 615 [b]) to prohibit domestic branches. Thus, in 1920, the Board promulgated a regulation prohibiting them (reg K, 12 CFR 211.6 [a] [1978]). As a result of this regulatory posture, petitioner’s parent corporation, Continental Illinois National Bank and Trust Company, owned three separately incorporated Edge Act banks with home offices in New York, Miami and Houston.
Through the International Banking Act of 1978, Congress amended the Edge Act in a general attempt to expand the powers of Edge Act banks to mobilize and apply resources to aid in an increase of American trade. The act also contained a specific instruction to the Federal Reserve Board to "review and revise its rules, regulations, land interpretations * * * to eliminate or modify any restrictions, conditions, or limitations” which inhibited the bank’s competitive position in international finance (92 US Stat 608). In response to this general mandate, the Board revised regulation K (12 CFR 211.4 [c], 44 Fed Reg 36007 [1979]) to allow Edge Act banks to establish branch offices within the United States.
Petitioner is a corporation which was organized under the Edge Act in 1980, with its home office in Chicago, Illinois. In *285 1980, petitioner established its New York City branch office and, since then, petitioner has established branch offices in a number of large cities throughout the United States. When petitioner was incorporated, the parent’s separately incorporated Edge Act banks were liquidated and replaced by branch offices of petitioner.
While the Edge Act banks were separately incorporated in each State, the banks did not dispute the right of the City of New York to tax the corporations. Section 627 of the Edge Act clearly authorizes such State taxation of an Edge Act bank by the State in which its home office is located.[2] Upon the advent of the Edge Act bank domestic branch office, however, petitioner challenged the city’s power to tax branch offices and refused to pay respondent’s financial corporation tax.[3] Respondent determined that petitioner owed deficiencies, penalties and interest, for the periods of September 1, 1980 to December 31, 1980 and January 1, 1981 to December 31, 1981, in the total amount of $6*075,329.35.
Petitioner commenced this proceeding pursuant to CPLR article 78 challenging respondent’s ability to tax a branch office of an Edge Act bank. The proceeding was transferred to the Appellate Division, First Department, by the Supreme Court, New York County (CPLR 7804 [g]). The Appellate Division confirmed the determination, without opinion. Petitioner then appealed to this court on constitutional grounds (CPLR 5601 [b] [1]). We now affirm.
II.
Petitioner urges that 12 USC § 627 reflects a congressional intent to prohibit taxation of these new branch offices of Edge Act banks. Alternatively, petitioner argues that the Edge Act *286 banks are Federal instrumentalities like national banks, and, therefore, are not subject to State taxation absent express congressional authorization. For the following reasons, neither of these contentions is meritorious.
A.
It is beyond dispute that Congress has the power to grant or withhold immunity from tax it deems necessary to further the purposes of Federal legislation (Washington v United States, 460 US 536, 546; United States v New Mexico, 455 US 720, 737; Carson v Roane-Anderson Co., 342 US 232, 234; Tribe, American Constitutional Law § 6-28, at 391; 1 Rotunda, Nowak and Young, Constitutional Law § 3.3, at 211). Although 12 USC § 627 authorizes nondiscriminatory taxation of Edge Act banks by the home office State, there is no plain authorization or prohibition of taxation by States of branch offices. Petitioner asks us to conclude that this omission was an expression of congressional intent to prohibit taxation of the branches. We reject this argument and, instead, examine the historical setting of section 627 to determine Congress’ intent in view of the statute’s facial ambiguity with respect to State taxation of branch offices.
Inasmuch as the statutory scheme of the Edge Act did not authorize branch offices within the United States (see, 12 USC § 615 [b]) and the possibility of such offices was decried by some of the original enactors (58 Cong Rec 7856-7857), it stands to reason that the authorization of full nondiscriminatory taxation by the home office State (12 USC § 627) was not an expression of immunity for then nonexistent branch offices. Instead, congressional debate indicated a purpose to subject Edge Act banks to State taxation (58 Cong Rec 4969). It is true, as petitioner notes, that some of the debaters analogized to the treatment of national banks, but their comments, read in context, appear to have arisen from a mistaken notion that national banks were subject to State tax (see, e.g., 58 Cong Rec 4969, 8108; Note, Constitutional and Statutory Analysis of State Taxation of Edge Act Corporate Branches, 51 Fordham L Rev 991, 1002-1003). Moreover, Congress’ failure to amend 12 USC § 627 to expressly permit States to tax Edge Act bank branch offices after the act was amended by the International Banking Act of 1978 is not instructive. Since the enactment permitted the Federal Reserve Board to design a mechanism to accomplish this and it was not until 1979 that the Federal *287 Reserve Board amended regulation K allowing branch offices, Congress’ inaction in 1978 cannot be interpreted as an expression of immunization of branches from State taxation. In short, an intention of Congress to deny the State’s power to tax Edge Act bank branches cannot be inferred from the language of the statute, which is at best ambiguous on that subject, or from the surrounding debates which indicate only an intent to subject Edge Act banks to State taxation.
B.
The remaining question is whether Edge Act banks are Federal instrumentalities because of their similarity to national banks and, thus, immune from State taxation. Almost from their inception, national banks were considered Federal instrumentalities exempt from tax (M’Culloch v Maryland, 4 Wheat [17 US] 316). The dispute spawning the M’Culloch doctrine, grounded on the supremacy clause (US Const, art VI, cl 2), involved a Maryland tax imposed upon banks not chartered by the State’s Legislature which placed the Second Bank of the United States in an inferior position to State banks. Noting that "the power to tax involves the power to destroy” (id., p 431), Chief Justice Marshall, writing for a unanimous court, concluded that States did not have the power to tax the Federal Government or its instrumentalities to the limits of the States’ discretion. After M’Culloch, national banks survived numerous attacks on their State tax-exempt status (see, e.g., Owensboro Natl. Bank v Owensboro, 173 US 664).
When the Federal Reserve Board took over many of the governmental functions of the national banks, once again, the banks’ tax-exempt status was questioned (Agricultural Bank v Tax Commn., 392 US 339). The court specifically declined to reach, as unnecessary, the issue whether today national banks should be considered nontaxable as Federal instrumentalities, because of pertinent legislation in the banking field (id., p 341). Thus, the recent tax-exempt status of national banks rested on a decision by Congress that they should not be taxed by the States. Moreover, effective in 1976, Congress removed this exemption (12 USC § 548). The argument that Edge Act banks are Federal instrumentalities because they are analogous to national banks, is, therefore, problematic.
While Congress may expressly designate an entity exempt from tax (see, Agricultural Bank v Tax Commn., 392 US 339, 341, supra; Graves v New York ex rel. O’Keefe, 306 US 466, *288 476), a court may also conclude that a body is a Federal instrumentality constitutionally immune from State taxation. The Supreme Court has recently expressed that tax immunity is appropriate only in the narrow instance "when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned” (United States v New Mexico, 455 US 720, 735, supra). In Department of Employment v United States (385 US 355), the court concluded that the Red Cross was such an instrumentality and not subject to State tax. While the court then stated that there was no precise test for a Federal instrumentality, the decisive features noted were that Congress chartered the Red Cross subject to governmental supervision and regular audit, that the principle officer and 7 of 49 Governors were appointed by the President and that the organization was indispensable to the workings of the Armed Forces, the provision of disaster relief from the Federal Government to the States and the performance of the Nation’s commitments pursuant to treaties (id., p 359). Of equal importance were the factors that the Red Cross received substantial material assistance from the United States Government and that the President and Congress acted in reliance on the Red Cross’ status as an arm of the Government (id., pp 359-360; see also, Standard Oil Co. v Johnson, 316 US 481).
In contrast, corporations whose only function was to service governmental atomic research centers for their management, procurement and maintenance needs were held not to be Federal instrumentalities in United States v New Mexico (supra; see also, United States v Boyd, 378 US 39). The essential nature of these functions to the Federal Government is beyond question. However, the Supreme Court specifically stressed that the professional interests of the contractors and the Federal Government were not congruent (455 US, p 740). The contractors’ profit seeking separated them sufficiently from the Government that State taxation was considered inoffensive to the notion of Federal supremacy (id., p 741).
To determine whether Edge Act banks are a Federal instrumentality, a virtual arm of the Government, therefore, it is necessary both to weigh those factors found determinative in Department of Employment v United States (supra, pp 358-359) *289 and to consider, generally, whether those factors demonstrate that the banks are so closely connected with the Government that they cannot realistically be viewed as separate entities (United States v New Mexico, 455 US 720, 735, supra). While it is true that Edge Act banks are chartered by the Federal Government and subject to strict Federal regulation, those characteristics alone are not enough to lead to a conclusion that they should be immune from tax (see Broad Riv. Power Co. v Query, 288 US 178; Railroad Co. v Peniston, 18 Wall [85 US] 5). There is a difference between the strong Federal hand in the internal leadership structure of the Red Cross (Department of Employment v United States, supra) and mere regulatory supervision common to industries from broadcasting to drug manufacturing. Edge Act banks receive no financial assistance from the Federal Government (id., p 359). The Federal Government does not rely on Edge Act banks to perform a traditionally governmental act (id., pp 359-360). Rather, the Government relies upon the banks’ separate profit motivation which propels the banks toward a mutually satisfactory end. It is this parting of the purpose (United States v New Mexico, supra) and the lack of nearly all of the traits found determinative in Department of Employment v United States (supra) that lead us to conclude that Edge Act banks are not Federal instrumentalities entitled to constitutional immunity from tax.
III.
Absent congressional action or the clearest constitutional mandate, a State’s power to tax may not be denied (United States v New Mexico, 455 US 720, 738, supra, quoting Michelin Tire Corp. v Wages, 423 US 276, 293). In the absence of both or any evidence that the city’s taxation scheme is discriminatory (see, Washington v United States, 460 US 536, 542; Memphis Bank & Trust Co. v Garner, 459 US 392, 397), the city’s tax must be upheld.
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Judgment affirmed, with costs.

.Edge Act (§§ 611-632) banks were authorized by Congress to provide general banking services for international transactions. A fuller discussion of the nature of these banks begins in section I, infra.

.Section 627 provides: "Any corporation organized under the provisions of sections 611-631 of this title shall be subject to tax by the State within which its home office is located in the same manner and to the same extent as other corporations organized under the laws of that State which are transacting a similar character of business. The shares of stock in such corporation shall also be subject to tax as the personal property of the owners or holders thereof in the same manner and to the same extent as the shares of stock in similar State corporations.”

.The City of New York imposes a financial corporation tax in the following terms: "For the privilege of doing business in the city in a corporate or organized capacity, a tax, computed under section R46-37.5, is hereby annually imposed on every banking corporation for each of its taxable years, or any part thereof’ (Administrative Code of City of New York § R46-37.1 [a]).