## NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ALSTOM POWER, INC. and GE STEAM POWER, INC., | No.  56476-9-II |
| Appellants/Cross-Respondents, | |
| v. | PUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | |
| Respondent/Cross-Appellant. | |

PRICE, J. — This is a tax case arising out of the rehabilitation of aging turbines in the Chief Joseph Dam.  Alstom Power Inc. (Alstom) contracted with the federal government through the United States Army Corps of Engineers (Army Corps) to complete complex, multi-year turbine rehabilitation work.  The contract required that Alstom complete initial design work prior to the Army Corps approving and, thereafter, authorizing the physical work on the rehabilitation and installation of the turbine components.

The Department of Revenue (Department) audited the project.  Following the audit and a subsequent challenge before the Board of Tax Appeals (Board), the Board determined that Alstom owed Washington *use tax* on design and engineering costs associated with the creation and rehabilitation of turbine components because those costs were part of the value of the turbine components.  However, the Board limited the inclusion of these design and engineering costs to only those that postdated the Army Corps' authorization of the proposed rehabilitation.  The Board

No. 56476-9-II

determined that pre-authorization costs should not be included in the value for tax purposes because of the provisions of the Alstom contract with the Army Corps.

Alstom and the Department both appeal the Board's order, each asserting it is entitled to relief under the Administrative Procedure Act (APA).[1]  Alstom argues that the Board erred when it determined that design and engineering costs related to the turbine components are subject to the use tax, but the Board correctly determined that use tax did not apply to development costs incurred before the Army Corps' authorization.  The Department counters that the Board correctly determined that design and engineering costs are subject to use tax because they contribute to the value of the installed turbine components, but the Board erred when it did not include preauthorization design and engineering costs in the taxable value.

We affirm the Board's determination that the design and engineering costs are included in the value of the components for Washington's use tax.  But we reverse the Board's determination that the pre-authorization costs are not also included in the taxable value and remand to the Board for proceedings consistent with this opinion.

FACTS

I.  BACKGROUND

State taxation of contractors working with the federal government is subject to limitations "because the Supremacy Clause prohibits states from taxing the United States directly."  *See Wash. v. United States*, 460 U.S. 536, 538, 103 S. Ct. 1344, 75 L. Ed. 2d 264 (1983).  As a result, federal contractors, as opposed to the federal government, are generally subject to paying use tax to the

---

[1] Ch. 34.05 RCW.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56476-9-II

state of Washington on the value of articles used in the process of a federal contract. *See* RCW 82.12.020. With this principle in mind, the following dispute developed between the parties.

Alstom contracted with the Army Corps in 2007 to rehabilitate turbines in the Chief Joseph Dam, located in Washington. The dam is a concrete gravity hydroelectric dam on the Columbia River that produces energy via large turbines. The project was complicated and took over 12 years to complete.

The contract provided that the Army Corps would be entitled to approve of the design of the component parts for the turbine rehabilitations before fabrication of turbine components and physical construction would be permitted to go forward. The contract stated that following the design and testing of the turbine components, "[t]he Government will provide the Contractor with formal written authorization to proceed with the fabrication and delivery of replacement [turbine components] . . . ." Administrative Record (AR) at 191.

Alstom subcontracted with its international affiliates in France (Alstom France) and Canada (Alstom Canada) for portions of the contract work. Before any work on the dam began, Alstom commissioned Alstom France to help determine the scope of the work needed for the turbines and dam. Alstom France designed and constructed a model of the dam and ran tests on the model. The results of the testing directly led to the design of turbine components for the rehabilitation.

Alstom Canada then used those designs and developed specific components of the turbines as part of the rehabilitation. Based on the designs, it was necessary to fabricate new components, some of which were called "runners," "[w]icket gates," and "stay vanes." AR at 320. The designs also included the rehabilitation of some existing turbine components. Following the submission

3

No. 56476-9-II

of this design and engineering work, the Army Corps authorized Alstom to proceed with the rehabilitation project.

With the Army Corps' authorization, Alstom Canada manufactured the new runners that it designed for the turbines. Two other Canadian companies manufactured the wicket gates and stay vanes. Alstom Canada's work to design and manufacture the turbine components was performed in Canada. Some existing turbine components were also rehabilitated.

Following the manufacturing and rehabilitation of turbine components, Alstom reassembled and installed the turbine units at the Washington location with the assistance of several Alstom Canada employees. Alstom then conducted performance tests on the turbines.

Alstom Canada invoiced Alstom for the cost of materials and, separately, for the labor to design, engineer, and manufacture the turbine components. As the main contractor, Alstom billed the Army Corps for the work done under the contract.

II. AUDITS AND DEPARTMENT DECISIONS

The Department audited Alstom for the period of January 1, 2009 through December 31, 2012. The audit resulted in the Department assessing use tax and deferred sales tax for the charges from Alstom Canada for the dam rehabilitation, including charges for the design and engineering costs.

Alstom appealed its audit to the Department's Administrative Review and Hearings Division (ARHD). The ARHD upheld the audit for use tax owed. The ARHD determined that Alstom owed use tax on the full *value* of the components for the rehabilitation, not just the cost of the raw materials used for the turbine components.

No. 56476-9-II

The Department performed another audit of Alstom for the period of January 31, 2013 through March 31, 2017. The second audit also assessed use tax and deferred sales tax on the value of the turbine components, which included the costs for design and engineering work invoiced to Alstom from its international affiliates, including Alstom Canada and Alstom France.

Alstom also appealed the second audit to the ARHD. The ARHD upheld the use tax owed under this audit.

The two ARHD audit decisions were consolidated and timely appealed to the Board.[2]

### III. APPEALS TO BOARD AND SUPERIOR COURT

Both Alstom and the Department filed motions for summary judgment with the Board.

In its motion, Alstom argued that the use tax statute and relevant rules only authorized the Department to tax the *cost* of materials and tangible personal property, not some larger computation of the total value of the turbine components. It also argued that the Department could not tax design and engineering work done by Alstom Canada because the work was performed outside of Washington. In support of its position, Alstom relied on a former decision by the Board, *Metalfab v. Department of Revenue*, BTA No. 93-33 (Oct. 18, 1995).[3] According to Alstom, the Board in *Metalfab* determined that a federal contractor should be taxed only for the raw materials purchased to complete the contract.

---

[2] GE acquired Alstom's hydroelectric business in 2015 and changed the company's name to GE Steam Power, Inc. The ARHD's decision on the second Alstom audit was issued to that name. We continue to refer to the company as Alstom for consistency and clarity.

[3] https://bta.wa.gov/index.php/decisions-3; AR at 92-104.

No. 56476-9-II

The Department's motion took the opposite position; that is, Alstom should owe use tax on the total *value* of the components it installed, and that value should include the charges from the international affiliates for labor to design, engineer, and manufacture the components. The Department argued *Metalfab* was inapplicable because the case did not address the relevant issue here; namely, how taxable value should be determined for the purposes of the use tax with government contractors.

The Board granted both motions for summary judgment in part. The Board determined that Alstom owed use tax on the "value of the materials, equipment, and other tangible personal property," measured by, and including, the costs of the design and engineering involved in the component design and manufacture *after* the Army Corps approved the designs and authorized the project to proceed. AR at 32. The Board determined that any engineering or design costs that preceded the Army Corps' authorization should not be included in the taxable value. The Board's final decision included the following conclusions of law:

> 4. The use tax is due on the value of the materials, equipment, and other tangible personal property where no retail sales tax has been paid.
>
> 5. "Value of the article used" is the purchase price of the article.
>
> 6. [Alstom's] argument that the purchase price is only the price of the materials is a misreading of the statute and rules. The purchase price includes all the costs to create, or fabricate, the particular item subject to tax, which includes the engineering and labor involved in the fabrication and creation.
>
> 7. The Board's decision in *Metalfab*, because it does not discuss the central issue in this case, does not control the Board's decision here.
>
> 8. The parts incorporated into the rehabilitated turbine generators required labor and engineering for their creation and fabrication to the specifications required by the [Army Corps]. These labor and engineering costs are part of the purchase price of the parts.

6

No. 56476-9-II

9. The entire purchase price is subject to use tax, even though the affiliate may have bifurcated the price between the ingredient materials and the services used to design and fabricate the parts.

10. The testing and engineering for the models that happened *prior* to the [Army Corps'] authorization to go forward with the rehabilitation of the turbine generators, because it was a separate part of the contract, is not properly part of the purchase price of the turbine generators and thus is not subject to use tax.

AR at 32 (footnotes omitted). The Department filed a petition for reconsideration on the Board's decision to sever the design and engineering costs *prior* to the Army Corps' authorization from the taxable value, which the Board denied.

The Department and Alstom both filed petitions for review to the superior court. Alstom moved to consolidate the two petitions for review into one case and to certify the consolidated case for direct appeal to this court. The Department agreed with Alstom's motion to consolidate, but opposed the motion to certify the case for direct appeal.

The superior court granted Alstom's motion to consolidate and certified the case for direct appeal to this court.

ANALYSIS

Alstom argues the Board erred when it determined that the value of the components used to rehabilitate the turbines included the design and engineering costs charged by Alstom's international affiliates, but it correctly determined that the testing and engineering that occurred before the Army Corps' authorization was not part of the value of the components.

The Department responds that the Board correctly determined that design and engineering costs were part of the value of the components, but the Board erred when it excluded pre-authorization costs from their value.

We agree with the Department.

7

No. 56476-9-II

I.  LEGAL PRINCIPLES

    A.  STANDARD OF REVIEW

The APA governs judicial review of decisions from an administrative board.  RCW 34.05.510; *Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).  Under the APA, we will only grant relief from an agency's adjudicative order if it meets one of the nine grounds.  RCW 34.05.570(3); *Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 157 Wn.2d 488, 498, 139 P.3d 1096 (2006).  Here, the parties assert two main grounds for review under RCW 34.05.570(3):

> (d) The agency has erroneously interpreted or applied the law;
> . . . .
> (i) The order is arbitrary or capricious.

The burden to demonstrate the invalidity of an administrative agency's action is on the party asserting invalidity.  RCW 34.05.570(1)(a).

We apply the error of law standard to determine whether an agency erroneously interpreted the law.  *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 391, 687 P.2d 195 (1984) (conclusions of law are reviewed for an error of law).  The error of law standard "calls for 'de novo' judicial review of the administrative decisions and allows the reviewing court to essentially substitute its judgment for that of the administrative determination, though substantial weight is accorded [to] the agency's view." *Id.* at 390.

"Arbitrary or capricious agency action is willful and unreasoning action taken without regard to the attending facts or circumstances."  *Squaxin Island Tribe v. Dep't of Ecology*, 177 Wn. App. 734, 742, 312 P.3d 766 (2013).

No. 56476-9-II

In an appeal of an administrative board's summary judgment, just as in a court proceeding, "[s]ummary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law." *Verizon Nw., Inc. v. Emp. Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). The facts in the administrative record are viewed in the light most favorable to the nonmoving party. *Id.*

B. STATUTORY INTERPRETATION

Statutory interpretation is a question of law. *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 665, 41 P.3d 1169 (2002). "The primary objective of any statutory construction inquiry is 'to ascertain and carry out the intent of the Legislature.' " *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)).

The language of the statute is the starting point. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If that language lends itself to only one interpretation, the inquiry ends because plain language does not require construction. *Id.* Where a statute is unambiguous, its words must be given their plain meaning and it will be presumed that the legislature's intent has been clearly expressed. *Burton v. Lehman*, 153 Wn.2d 416, 422-23, 103 P.3d 1230 (2005). The rules of statutory interpretation equally apply to interpretation of agency rules and regulations. *Dep't of Licensing v. Cannon*, 147 Wn.2d 41, 56, 50 P.3d 627 (2002).

C. TAXATION OF FEDERAL CONTRACTORS

Generally, Washington imposes retail sales tax on the sale of tangible personal property in the state under RCW 82.08.020. For contractors working within the private sector, a retail sale includes the sale of personal tangible property and labor and services rendered for "repairing . . .

9

No. 56476-9-II

existing . . . structures under, upon, or above real property of or for consumers . . . ." RCW 82.04.050(2)(b).[4]

When retail sales tax has not been paid for an item, the paying party instead must pay a use tax. *See* RCW 82.12.020(1)(c). The imposition of the use tax arises from RCW 82.12.020, which states:

> There is levied and collected from every person in this state a tax or excise for the privilege of using within this state as a consumer any:
>
> (a) Article of tangible personal property acquired by the user in any manner . . . .

RCW 82.12.020(1)(a). The purpose of the use tax is " 'to tax the privilege of using all tangible property within the state on which sales tax has not been paid.' " *Sprint Spectrum, LP v. Dep't of Revenue*, 174 Wn. App. 645, 659, 302 P.3d 1280 (quoting, *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 638, 946 P.2d 409 (1997)), *review denied*, 178 Wn.2d 1024 (2013); RCW 82.12.020(1)(a).

The use tax becomes important in the context of federal contractors. Because the Supremacy Clause of the U.S. Constitution prohibits state taxation of the federal government, states cannot require federal contractors to collect retail sales tax from the federal government. *See Wash.*, 460 U.S. at 538. Therefore, federal contractors are responsible for paying use tax instead. *See* RCW 82.12.020(1)(c).

---

[4] Multiple former versions of the relevant statutes—including RCW 82.04.050, RCW 82.04.190, RCW 82.12.010, and RCW 82.12.020—were in effect during the events of this case. However, because the relevant language has not changed, we cite to the current versions of the statutes.

No. 56476-9-II

This use tax scheme is imposed upon federal contractors by defining these contractors as being "consumers" with respect to "tangible personal property" used in their federal projects. RCW 82.04.190(6). One of the many definitions of a "consumer" is:

> Any person engaged in the business of constructing, *repairing*, decorating, or improving new or *existing buildings or other structures* under, upon, or above real property of or *for the United States* . . . . Any such person is a consumer within the meaning of this subsection in respect to *tangible personal property* incorporated into, installed in, or attached to such building or other structure by such person, except that consumer does not include any person engaged in the business of constructing, repairing, decorating, or improving new or existing buildings or other structures under, upon, or above real property of or for the United States, or any instrumentality thereof, if the investment project would qualify for sales and use tax deferral under chapter 82.63 RCW if undertaken by a private entity.

RCW 82.04.190(6) (emphasis added).

The Department's administrative rule on the taxation of government contractors further explains:

> The use tax applies upon the *value of all materials, equipment, and other tangible personal property purchased at retail, acquired as a bailee or donee, or manufactured or produced by the contractor* for commercial or industrial use in performing government contracting and upon which no retail sales tax has been paid by the contractor, its bailor or donor.

Former WAC 458-20-17001(7) (1986) (emphasis added).[5] The rule further requires that the use tax be "paid by the government contractor who actually installs or applies the property to the contract." Former WAC 458-20-17001(9).

To determine the use tax owed for these materials and tangible personal property, the general use tax statutes provide that the tax is placed on the "value of the article used," multiplied

---

[5] Although WAC 458-20-17001 was changed in 2022, after the events of this case, we cite to the former version.

11

No. 56476-9-II

by an applicable rate in effect for the retail sales tax. RCW 82.12.020(4)(a). The "value of the article used" is, in turn, defined as "the purchase price for the article of tangible personal property, the use of which is taxable under this chapter." RCW 82.12.010(7)(a).[6] The definition continues by providing that this "purchase price" is generally consistent with "the retail selling price":

> In case the article used is acquired by lease or by gift or is extracted, produced, or manufactured by the person using the same or is sold under conditions *wherein the purchase price does not represent the true value thereof*, the value of the article used is determined *as nearly as possible according to the retail selling price* at place of use of similar products of like quality and character under such rules as the department may prescribe.

RCW 82.12.010(7)(a) (emphasis added).

In sum, under Washington tax law, because federal contractors may not impose sales tax on the federal government, federal contractors are required to pay use tax on the value of the materials and tangible personal property used for the contract with the government. The taxable value of these materials is generally equivalent to the retail selling price. RCW 82.12.010(7)(a).

II. APPLICATION

A. "VALUE" INCLUDES DESIGN AND ENGINEERING COSTS

Alstom asserts that the Board erroneously interpreted and applied the law in determining that design and engineering costs necessary to manufacture a turbine component are included in the taxable value of the component for the use tax. The Department argues that the Board did not

---

[6] The Board based its decision on the "value of the article used" as set forth in RCW 82.12.010(7)(a). The Department asserts that RCW 82.12.010(7)(b), not subsection .010(7)(a), is applicable in cases involving government projects. Resolving this question is unnecessary; our analysis is consistent with either subsection because both RCW 82.12.010(7)(a) and .010(7)(b) define the value of the article used as the "retail selling price." However, because the Board relied on RCW 82.12.010(7)(a) for its decision, we refer to that subsection.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56476-9-II

err because the value of the components includes these types of costs if they contributed to the value of the component. We determine that design and engineering costs for the turbine components are part of their value because those costs would be included as part of their retail selling price.

Alstom's appeal of the Board's decision on this issue is focused on the following challenged conclusions of law:

> 4. The use tax is due on the value of the materials, equipment, and other tangible personal property where no retail sales tax has been paid.
>
> . . . .
>
> 6. [Alstom's] argument that the purchase price is only the price of the materials is a misreading of the statute and rules. The purchase price includes all the costs to create, or fabricate, the particular item subject to tax, which includes the engineering and labor involved in the fabrication and creation.
>
> . . . .
>
> 8. The parts incorporated into the rehabilitated turbine generators required labor and engineering for their creation and fabrication to the specifications required by the [Army Corps]. These labor and engineering costs are part of the purchase price of the parts.

AR at 32.

Alstom argues that the Board erroneously interpreted or applied the law with these conclusions of law and that the use tax in this context should be limited to the actual cost of the materials and tangible person property comprising the turbine components, not the cost of materials, plus the testing, design, and engineering costs used to develop the turbine components.

To support this position, Alstom makes three main points. First, Alstom argues that the language of the tax statutes clearly indicates that the legislature did not intend for labor and services to be taxable under the use tax. Alstom starts by pointing to the definition of consumer in RCW 82.04.190(6), which states that a federal contractor is only a consumer for the "tangible personal

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

property" it incorporated into a project. Alstom then compares this language to a statute in the business and occupation tax chapter, RCW 82.04.050, which utilizes the same "consumer" definition, but specifically excludes retail sales tax for a federal contractor's " 'labor and services rendered in respect to the . . . repairing [.] . . of . . . existing [.] . . structures . . . upon . . . real property of or for the United States . . . .' " Br. of Appellants at 38 (emphasis omitted) (some alterations in original) (quoting RCW 82.04.050(12)). Considering those statutes together, Alstom argues the clear legislative intent is that the references to "tangible personal property" in the use tax statute must not include labor and services in its taxable value, but be limited only to the raw materials. Alstom concludes that "[n]owhere in the plain language of these statutes does it state that the . . . use tax applies to design, engineering, or other services." Br. of Appellants at 39. Therefore, Alstom believes that the use tax should be applied to the cost of raw materials, but not the service costs that were used to create and rehabilitate the turbine components.

Second, Alstom contends that the Department's rule, former WAC 458-20-17001, supports the same conclusion. Alstom argues that, like RCW 82.04.190(6), the rule also imposes use tax on materials and tangible personal property, but does not mention anything like design, labor, or service costs. Therefore, the plain and ambiguous language of the rule shows that the use tax is only owed on raw materials purchased by the subcontractors, and not on the subcontractors' design and engineering costs.

Third, Alstom argues that the Board's decision is inconsistent with the Board's previous decision in the *Metalfab* case and with federal case law. According to Alstom, the Board has already decided in *Metalfab* that only raw materials should be taxed under the use tax and, further,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56476-9-II

the United States Supreme Court, in *Washington v. United States*, held that the Supremacy Clause bars labor costs from being subject to the use tax.

Prior to addressing each of Alstom's arguments in turn, we must first determine the central issue in this case—what is the taxable "value" in the context of the use tax for contractors with the federal government? Is the taxable value limited to the costs of the materials used for an item? Or does that value include costs associated with the items' development, like design and engineering costs? Under the APA, we review this question of statutory construction de novo, but with deference to the agency's expertise. *See Meyering*, 102 Wn.2d at 390-91.

As outlined above, determining the taxable value for the use tax requires a combined reading of several different statutes. But the principal statute discussing this issue of valuation for the use tax is RCW 82.12.010. The definition of "value of the article used" anticipates that the taxable value of an item *may not* be equivalent to the "purchase price" of the item:

> In case the article used is acquired by lease or by gift or is extracted, produced, or manufactured by the person using the same or *is sold under conditions wherein the purchase price does not represent the true value thereof, the value of the article used is determined as* nearly as possible according to *the retail selling price* at place of use of similar products of like quality and character under such rules as the department may prescribe.

RCW 82.12.010(7)(a) (emphasis added).

This distinction between the "purchase price" and the "retail selling price" can be seen as the legislature's recognition that the *cost* of the articles purchased and used by the contractor may not represent the true *taxable value* of the item. For example, if a federal contractor merely purchased a product from an unrelated third-party for use in a federal project, the taxable value would presumably be the purchase price paid by the contractor. But if the contractor

15

No. 56476-9-II

commissioned the manufacture of the product from raw materials, the end product would clearly be worth more than the sum of these raw materials purchased to complete the commissioned items. In such a case, the legislature instructs that the taxable value of the product would be the "retail selling price." RCW 82.12.010.

As with any retailer of any engineered product, pricing the product by merely totaling the costs of the raw materials would not capture the true retail value. The true retail value would necessarily include the cost of designing and engineering to create and manufacture that product. The legislature's use of the term "retail selling price" is clearly designed to capture these aspects of the development of a product. RCW 82.12.010(7)(a). Thus, the "value of the article used" under RCW 82.12.010(7)(a) would not simply be the cost of raw material used to construct an item, but the total cost, which includes the cost to design and engineer the item.[7]

Applying these conclusions here, Alstom subcontracted with its international affiliates to design, engineer, and manufacture the turbine components. Alstom then incorporated those items into the turbines as part of the contracted rehabilitation. Therefore, Alstom essentially purchased the turbine components from the subcontractors, paying for both the raw materials and the design and engineering work for the creation of the turbine components. Because Alstom purchased and incorporated turbine components into the turbines, they became the "articles used" for the rehabilitation. *See* RCW 82.12.010(7)(a), .020(4)(a). As the articles used for the contract, the statute dictates that Alstom must pay use tax on a value equivalent to a retail selling price, which,

---

[7] Although we reach this conclusion with de novo review of the statutory language, we note that the agency, with its expertise in this area, arrived at the same conclusion.

16

No. 56476-9-II

like any purchased product, would necessarily include the costs to design and engineer the components.

Turning now to each of Alstom's counter-arguments, first, Alstom argues that reading a combination of tax statutes shows the legislature did not intend to tax the labor and services of a federal contractor. However, there is nothing inconsistent about taxing the retail value of an article used by a federal contractor and a prohibition on taxing the labor and services of a federal contractor. Alstom's labor and services are not being taxed; the value of the turbine components used is.[8]

Second, Alstom argues that the Department's own rule, former WAC 458-20-17001, excludes labor and services from the use tax. But here again, even if true, the exclusion does not affect our conclusion. Both the Department's rule and chapter 82.12 RCW require payment of use tax on the true value of the objects, whether labeled "articles used" under the statute or "materials" under the rule. The rules and statutes are consistent, and both indicate that use tax is applied to the retail value of the turbine components.

Third, Alstom supports its position by reference to the Board's decision in *Metalfab* and federal case law. Neither changes the result here. In *Metalfab*, a federal subcontractor was charged use tax for the cost of the materials that it incorporated into the federal project. AR at 92-104. The subcontractor did not believe that it should be required to pay the use tax because it was not a consumer under the statutory definition. AR at 99-101. The Board rejected that argument and

---

[8] Notably, despite the Department's heavy reliance on RCW 82.12.010(7), Alstom's briefing does not meaningfully address the legislature's intent in formulating the "value of the article used" language in that provision.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56476-9-II

determined the subcontractor was a consumer and, therefore, was required to pay use tax on the value of the materials it purchased for the project. AR at 103-04. The issue of the subcontractor's labor was neither raised nor discussed in the decision. Accordingly, *Metalfab* is not instructive for the fundamental issue in this case.

Finally, Alstom contends that longstanding Supremacy Clause jurisprudence requires that its position prevails, citing *Washington v. United States*. However, like the *Metalfab* decision, the *Washington* decision does not conflict with the Board's order. In *Washington*, the Supreme Court upheld Washington's use tax on "the sale of materials to federal contractors" and acknowledged that the use tax did not apply to "the contractor's labor costs and markup." 460 U.S. at 539-40. Again, Alstom is not being taxed for its own labor in installing the turbine components. It is being taxed only on the true value of the turbine components it purchased from its subcontractors. The *Washington* decision does not support Alstom's position.[9]

Thus, the Board did not err when it determined that the taxable value of the turbine components used in the project included the subcontractors' design and engineering costs.

B. USE TAX IS NOT TAXING FOREIGN LABOR

Separate from its argument about taxable value, Alstom also argues the Board erred by effectively taxing the value of services performed outside of Washington, contending Washington has no ability to tax activity outside the state. The Department argues that taxing the value of the

---

[9] Alstom cites the doctrine of judicial estoppel while arguing the applicability of *Washington*, 460 U.S. 536. The Department responds that this doctrine was not adequately raised below. Given our conclusion that the *Washington* decision is irrelevant to the issues presented in this case, we need not address whether judicial estoppel was sufficiently raised below.

18

No. 56476-9-II

materials, even if that value is increased by labor outside the state, is not the same as directly taxing the labor. We agree with the Department.

Alstom is correct that Washington could not directly tax labor performed outside of its tax jurisdiction, but Alstom is not being taxed *directly* on labor. Rather, Alstom is being taxed on the value of the materials and tangible personal property installed inside this tax jurisdiction. *See* RCW 82.12.020 (explaining that use tax applies to the value of the article used). Because, as discussed above, the cost of design and engineering labor is subsumed into the taxable value of the items incorporated into the dam, the foreign *labor* is not what is being taxed, only the value of the item is being taxed.[10] Therefore, the Board did not err by failing to exclude foreign labor costs from the taxable value.

C. DESIGN AND TESTING COSTS PRIOR TO ARMY CORPS' AUTHORIZATION

Having concluded that the Board correctly included design and engineering costs in the taxable value of the turbine components, we next turn to the Department's argument that the Board erred by excluding any costs that predated the Army Corps' authorization for the project to proceed. The Department contends that the Board's decision was arbitrary and capricious when it did not impose use tax on the design, engineering, and testing costs incurred *before* the project's authorization. We agree.

---

[10] In fact, the legislature contemplated that items used for a contract may arrive from a foreign jurisdiction because "value" also includes the tariffs or duty to be paid with respect to importation of the item. RCW 82.12.010(7)(a) ("[Value of the article used] also includes, in addition to the purchase price, the amount of any tariff or duty paid with respect to the importation of the article used."). Even though a foreign item would necessarily include some amount of foreign labor to produce, use tax is still applied to the total value of the item.

No. 56476-9-II

The Department challenges the Board's conclusion of law 10, which states,

The testing and engineering for the models that happened prior to the [Army Corps'] authorization to go forward with the rehabilitation of the turbine generators, because it was a separate part of the contract, is not properly part of the purchase price of the turbine generators and thus is not subject to use tax.

AR at 32 (emphasis omitted).

As discussed above, the Board properly concluded that the value of an item for the purposes of the use tax includes the design and engineering costs that are necessary to create the item. But in this conclusion of law 10, the Board drew a distinction between those design costs that predate the approval of the Army Corps and those that postdate the approval by citing the Alstom contract.

Although the Board supported its decision with citation to the Alstom/Army Corps contract, this pre-/post-authorization distinction is neither supported by the contract nor the statutory definitions of value. Neither party argues the contract is meaningfully separated into pre- and post-authorization procedures that would affect the value of the turbine components. The contract only provided that the Army Corps would authorize the prospective design of the turbine components to be created and rehabilitated before the actual work on those components occurred, and then detailed both pre- and post-authorization work that would take place under the contract.

The design and engineering services were all necessary to the creation of the turbine components, whether or not those services occurred before or after the Army Corps' authorization. Indeed, creation of the turbine components could not have happened but for the initial design and

No. 56476-9-II

testing.[11]  Accordingly, when considering the above analysis of the definition of "value of the article used," the costs to design and test the turbine components are also properly included in the value of the turbine components needed to rehabilitate the turbines, and are therefore also subject to use tax. The Board's decision provides no explanation of how the statutory provisions discussed above are altered by the provisions of Alstom's contract with the Army Corps.

The Board's decision to apply the statutory concept of taxable value for the use tax differently for the separate phases of the contract was without reason, making the decision arbitrary and capricious. We reverse the Board's determination that the design, engineering, and testing costs that predated the Army Corps' authorization were not subject to use tax.

---

[11] Alstom argues that these service costs should not be subject to use tax because the items used for testing were not incorporated into the dam. However, the testing and design work would have been integral to the creation of new turbine components and rehabilitation of others and, therefore, added value to the turbine components.

No. 56476-9-II

CONCLUSION

We affirm the Board's determination that the design and engineering costs are included in the taxable value for Washington's use tax. But we reverse the Board's determination that the pre-authorization design, engineering, and testing costs are not included in the taxable value and remand to the Board for proceedings consistent with this opinion.

PRICE, J.

We concur:

CRUSER, A.C.J.

CHE, J.

22